Geronimo v. the U.S. Attorney General It's Friday Good morning. Good morning, Your Honors. May it please the Court, Efrain Alcina on behalf of the petitioners in this case. May I start with a brief synthesis of the facts of the case? Sure. In this case, the petitioners are a 26-year-old single mother and her two children, natives and citizens of Guatemala. They entered the United States without inspection in 2014. The mother filed an application for asylum that included the children as derivative beneficiaries. A hearing was conducted by an immigration judge on August 14, 2015. The immigration judge denied the applications, finding that any harm that the petitioner had experienced did not rise to the level of persecution, that she had failed to articulate a cognizable or cognizable particular social group. I'm not sure which way we pronounce that word. And that she had failed to establish that the Guatemalan government was unable or unwilling to protect her. The petitioners filed a timely appeal to the Board of Immigration Appeals, and the Board remanded for two reasons. First, they found that the incidents of harm that the petitioner had suffered over a period of six years, in fact, rose to the level of persecution. And they also found, contrary to the IJ's, to the immigration judge's conclusion, that they did not construe its own decision in matter of ARCG, where the board found that married women in Guatemala were unable to leave the relationship, was a cognizable group, to require a legal marriage for the group to be cognizable. I was confused by your position, if I understood it correctly, that Ms. Rivera Geronimo's particular social group was not defined by domestic violence. I mean, it seemed like to me that it was. That's not our position. Why not? I mean, we know from matter of ACRG, which is, you know, you know about the case, she cited it, that that's an element. I mean, the BIA has recognized married women that can't leave a relationship because of the threat of domestic violence. And I just have been wondering ever since I read about this case, I mean, why you wouldn't say her particular social group is, you know, being a woman in a domestic relationship that was subject to domestic violence and therefore couldn't leave. A particular social group cannot be solely defined by the fact that the group is subject to persecution, although... It cannot? Not solely, not solely, but it could be one of those definitions. In fact, after the Board decided this case, the Attorney General overruled matter of ARCG. Yeah, but you had your window of opportunity, you know, to help this woman. I mean, we can never know all the factors that go into how a lawyer chooses to argue their case, but, you know, matter of AB wasn't in existence when you took the position that you did. I mean, I just didn't understand why you would say that she was not subject to domestic violence. She was subject to domestic violence. So why did you not claim that that was her particular social group? Because precedent from this Court has deferred to the Board's interpretation that a particular social group cannot be defined by the persecution that the members are subjected to. What precedent is that? I'm sorry. That's all right. I mean, I know you read matter of ACRG, and that is, I mean, the particular social group in that case was married women who were in relationships that they couldn't leave because of abuse. I mean, it doesn't seem like much of a leap to get from married women to women who are in a domestic relationship that can't leave because of domestic abuse. Well, it's not because of the domestic abuse that they cannot leave. It's because of cultural factors and societal factors in that particular society. Our position is that the proposed particular social group in the Respondent's case is defined, is composed of members who share a common immutable characteristic that they should not be required to change, and that characteristic would be gender, and also the fact that of nationality, Guatemalan women. The fact that they are also in domestic relationships would, in our view, put them in a position of a subgroup within a particular social group. Our position is that Guatemalan women are sufficiently discreet to be able to constitute a particular social group of its own. The words domestic relationships, the term, I'm sorry, it's pretty universal in our view, and we would refer to the definition on Title 18, Chapter 44, Section 921, that defines domestic relations as a relationship with a current or former spouse, person with whom the victim shares a child in common, person who is cohabiting with or who has lived with in the past. But, I mean, from the point of view of the immigration authorities, I mean, if there's a lovely family relationship, just that the husband and wife just don't happen to be married, I mean, why would that domestic partnership be appropriate for a particular social group? I mean, I just can't understand why you don't add in the fact which you acknowledge that your client was in an abusive domestic relationship. She was, and we just understand the current state of the law to not consider a particular social group defined solely by the fact that they are being persecuted because it's circular. And in that sense, our position is that she was not targeted because she was targeted. She was not the victim of domestic violence because she was the victim of domestic violence. She was the victim. Do you agree with the finding of matter of ACRG? Yes. Yes, I do. I mean, why wouldn't that very same reasoning apply to your client? I mean, our position is that it does. We did not, we did not include. The particular social group in ACRG, I'm saying it backwards, sorry, had abuse in there. I mean, so I just can't, I'm just not following your reasoning. Not in the definition of the particular social group. Why couldn't they leave? Because they were subject to abuse. Because in her particular case, because she was married and I believe there was some mention of her religion also. And the fact that she was in a religious marriage somehow put her in a position that she was not to leave her spouse. I've argued before that, as a matter of fact, all asylum applicants were able to leave at some point. Otherwise, they would not be here applying for asylum had they not been able to leave. That's another argument against your client. I understand, Your Honor, but our position is that her group is similar to the one in ARCG. Just the Attorney General will not recognize it anymore. Well, it's too late, maybe. Thank you. You've saved some time for rebuttal. Mr. Lutz, we've kept your office busy this week. Everybody's been back and forth to Atlanta, I guess. Well, it's our pleasure to be here, Your Honor. We really appreciate you being here. We've had immigration cases every day, and it's been helpful to us to hear from your office. I'm glad to hear that. Thank you, Your Honor. May it please the Court, Alexander Lutz for the government in this case. Your Honors, this case presents three issues. The first is the cognizability of Ms. Rivera's proposed particular social group, which she defined as Guatemalan women in domestic relationships. The second is whether the absence of such cognizability also rendered Ms. Rivera ineligible for what's called humanitarian asylum. But as we noted in a Rule 28J letter we filed last week, in the interval between briefing and today's argument, that issue has been resolved in the government's favor by this Court's finding precedent in Paris and Teno. The third issue has to do with a separate asylum claim and asks whether Ms. Rivera showed that a former romantic partner she had in the United States would harm her if she returned to Guatemala on account of any protected ground articulated in the Immigration and Nationality Act. Now, Your Honors, with respect to that, except for that last issue, because it relates to a separate asylum claim, the Court can resolve the entire case with one determination, which is that this record doesn't compel the conclusion that the group Ms. Rivera defined was showed by the evidence she presented to be particular within the context of Guatemalan society. I mean, I guess my feelings about this are pretty transparent, but it seemed like to me that the BIA, when they got the case in the first time and recognized that Ms. Rivera Geronimo, that there was a particular social group that she could qualify for, tried to give her another chance and sent it back so that she could articulate one that she did fit in and, you know, we just got the same articulation of the particular social group that they had before the remand. So my question is, you know, does she have any recourse at this point, assuming for me that a domestic partnership with a woman from Guatemala who can't leave because of abuse is a particular social group? Does she have any remedy at this point? Your Honor, unfortunately, no. The decision that's on review today that the agency issued was pretty simple, that Guatemalan women in domestic relationships is not legally cognizable. So that's the issue that's before the Court for decision, and the record pretty clearly supports that holding. So there's no way she can fix it, to your knowledge. Well, Your Honor, I don't think there's anything to fix, and I think hovering in the background here is your understanding. Well, I mean, just assume for me that if the particular social group had been correctly articulated, you know, just accept that for me, but it wasn't. It could have been, but it wasn't. Is there anything at this point that she can do? Your Honor, I'm afraid I— I'm sorry. I'm refining my question. To get that correct particular social group before the IJ to get a decision. Well, Your Honor, I'm afraid I have to take issue with the premise of your question, but let me explain— No, no, no. We can ask hypotheticals. Trust me. Of course you can. Of course you can. Well, assuming—the part I'm stumbling on is Your Honor's phrasing that if the group had been correctly articulated. Ms. Rivera had two opportunities to articulate. Oh, no, no. I'm not arguing with any of that. I'm just saying— But you're saying if hypothetically there were some cognizable group out there that she could have articulated but she didn't,  Is that the question? Yeah. Or that she can do in terms of a motion to reopen or anything like that? Well, she's certainly free to file a motion to reopen or reconsider, but I certainly— Would it be timely? I could see some problems with the agency granting that. I think that there would be—it would probably be meritless if it were along the lines Your Honor proposes. Would it have to—but, I mean, would it be timely? No, Your Honor. A motion to reopen has to be filed within 90 days of the board's decision, and the board's decision here was issued in April of last year. So we're well past that point. So it would have to be based on changed circumstances in the country of origin, and I'm not sure what showing Ms. Rivera could make on that point. But, again, it's hard to imagine. But, Your Honor, if I could, I want to address what I think is in the background of your question. I think it's the question you asked my brother at the bar a moment ago about ARCG and why he didn't define the group based on domestic violence. Opposing counsel is correct that that group would not have been cognizable because it would have been impermissibly circular. The board said that in a matter of CA, and this Court itself upheld that decision in Castillo-Arias 2. And that holding makes sense. The whole point of a particular social group is that when an attacker chooses their victim, when they single out this particular victim for persecution, they have an animus against some characteristic of that person. That's why they chose them. They're trying to overcome some quality that defines a particular social group that that person is in. But if the proposed quality is being a victim of domestic violence, that essentially is claiming that the attacker targeted the victim for domestic violence because of domestic violence. And cause has to precede effect. The motive can't pre—the motive has to preexist the conduct. So that same domestic violence can't be the basis for itself. And so Mr. Alcino was correct to refrain from phrasing his group in that way. And furthermore, Your Honors, I would note that, again, as Mr. Alcino pointed out, ARCG has been overruled. And one of the reasons that that happened is because it was— But, I mean, matter of AB was not the basis of the BIA's decision in this case. That's absolutely correct. It hadn't come out yet. Right. But I think a point AB made is illustrative here. One of the reasons it overruled matter of ARCG was because matter of ARCG was based on a concession by the government at the agency level in that case that the group the petitioner had proffered was cognizable. And the Attorney General in matter of AB said that doesn't satisfy the Board's obligation under its precedent in MEVG and WGR to do a particularized analysis in each case of the group the petitioner puts forward based on the evidence the petitioner put forward. But we can't base our decision on a reason not articulated by the BIA, can we? No, you can't, Your Honor. And I'm certainly not suggesting that. I just want to step outside a little bit to answer the question that Your Honor was asking. I just don't want to leave any confusion on that point. Your Honors, in this case, the group that Ms. Rivera actually articulated, Guatemalan Women and Domestic Relationships, is just not defined with particularity based on this record. It's not defined with particularity, and it's not shown to be socially distinct. And just to briefly go over a couple points in the record, I note that in Ms. Rivera's closing argument and her argument on remand and her briefs to the Board, even in her briefs to this Court, we don't see any explanation of what Guatemalan Women and Domestic Relationships means. Does that mean people who are married, people who are in a relationship of equal commitment and dedication but who aren't married, people who are not living together but they are in such a relationship, people who are living together but they're just relatives, they're not in a romantic relationship? We just don't know. There's no answer in the record to that question, so there are no outer limits defined for this group. For that reason alone, the group fails. It has to be immutable, defined with particularity, and socially distinct. So failure on any of those points is unfortunately enough to undercut the cognizability of the claim. But even if the Court didn't buy our arguments on particularity, social distinction is still also not shown by this record because there's no showing that Guatemalan law or Guatemalan society makes meaningful distinctions just based on the fact of someone having entered into a domestic relationship. That on its own is not enough to define the group. So Ms. Rivera correctly followed the Board's precedent and this Court's precedent by refraining from defining her group based purely on domestic violence, but unfortunately the group that she did define is not supported by this record. And that's certainly in some ways an unpalatable result, Your Honor, so I understand. But as this Court acknowledged in Castillo-Arias, the phrase particular social group is not meant to be a catch-all. There are going to be some petitioners who have suffered past persecution, as Ms. Rivera has, and who undeniably deserve our compassion, but they can't connect the harm they've suffered to their race, their religion, their nationality, or their political opinion. And then particular social group seems like an invitation, but not every form of persecution is going to be able to be connected to a cognizable particular social group, as the Board and this Court have defined that term. And that's the position Ms. Rivera finds herself in. The only other two issues in the case, I think, merit even less discussion, subject, of course, to Your Honor's questions. The humanitarian asylum issue, as we pointed out, has been squirrelly foreclosed by Perez and Tenno. Humanitarian asylum and the opportunity to make a showing of other serious harm require that the petitioner already be a refugee, which means they've suffered past persecution on account of a protected ground. And as we've just discussed, Ms. Rivera failed to meet that burden. And the last issue is whether she showed that a different romantic partner that she'd had in the United States, who she says has since been removed to Guatemala, would target her in Guatemala on account of any protected ground. The record can't compel it. I'm sorry, Your Honor. Speaking of that, did Ms. Rivera help the government in getting her United States abuser removed from the country, to your knowledge? Your Honor, I'm not aware of that. My knowledge of the facts of the case is limited to what's in the certified administrative record from the agency. And I think what that agency shows is that she reported an incident of domestic abuse and the sheriff's office responded. And she asserted that that resulted in her partner being removed. But if she did cooperate with the authorities, would she be eligible for a U visa? I can't say, Your Honor. I understand the question, but that's a determination that United States Citizenship and Immigration Services would have to make. And I can't preempt their reasoning. I don't even know if an application like that has been filed. Assuming it has, I don't know what's in it. I doubt it. So all that's left is whether that person would harm her in Guatemala on account of a protected ground. And the only motive that the record even suggests for this person is that he would seek to harm her because she was involved in his removal. And again, whether or not that's true, that's just the basis she believes would motivate any future harm. And that's not a protected ground. That's not one of the five protected grounds in the refugee definition. So unless there are any further questions from the Court. No, thank you. I appreciate you being here. Thank you, Your Honors. We request that the Court deny the petition for review. Thank you. I can answer that last question regarding the U visa if the Court would want me to. Have you filed a U visa for her? Application for her? The police would not sign her certification because the accused was taken into ICE custody before he could be prosecuted. So there was no prosecution of the case. He was just taken into ICE custody as a result of that arrest. So you did not apply for a U visa for your client? We applied for it, but they would not sign it. The law enforcement office would not sign the certification alleging that there was no prosecution. And to answer the Court's prior question, the only recourse that the respondent would have would be if this Court found that her proposed particular social group was cognizable and would remand to the BIA because the Board's decision, neither the Board's decision nor the immigration judge's decision really made a finding on a nexus. They simply dismissed the respondent's proposed particular social group as not cognizable, but they did not make a determination on whether she—on whether there was a nexus between any persecution suffered or feared and a protected ground. They simply dismissed her case because they found that her proposed social group was not cognizable. And to that end, we would invite the Court to consider that the respondent's proposed group is still cognizable because it is made up of members who share an immutable characteristic based on gender. In fact, in the decision of Perez-Santeno, this Court, the way I read it, sort of leaned towards considering that women can be a discrete group even though it is a large group. And I'm referring to page 1309 where the Court, referring to the content reports on the report, described groups that could be discrete. They were prisoners and listed a few of the groups that included women as a discrete group. The fact that women in Guatemala can be a large group is not at odds with this Court's decision in the matter of Castillo-Arias, finding that the particular social group cannot be catch-all for any other category of harm because submitting a cognizable group is only one of the steps that an applicant has to meet to meet the definition of a refugee. In addition to that, they have to submit that there was a nexus between the harm suffered or feared and that they are not within a group of people that are not ineligible for asylum, meaning that they deserve it as a matter of discretion. And that they cannot avoid persecution by relocating to a different place in their country and that their persecutor is the government or a private actor that the government cannot or will not be able to control. And based on the evidence in the record, we would respectfully submit that the respondent proposed social group of Guatemalan women in domestic relationships could be cognizable and if the Court agrees, then they should remand to the Board to consider the remaining factors of the definition of a refugee, specifically whether the Guatemalan government can protect the respondent. Your time is up, so if you could wind it up. All right, thank you. The Court is in recess for the week. All rise. Thank you.